UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

v.                                                  Case Number 12-CR-20332-01
                                                    Honorable Thomas L. Ludington

MOSES LEROY MITCHELL,

          Defendants.
_____/

**ORDER DENYING DEFENDANT'S MOTION TO WITHDRAW PLEA**

Three men — Moses Mitchell, Patrick Sheppard, and William Bibbs — committed a number of armed bank robberies. All three have entered guilty pleas. Sheppard and Bibbs have been sentenced. But at Mitchell's sentencing hearing, against the advice of his counsel he orally moved to withdraw his guilty plea. For the reasons that follow, the motion will be denied.

**I**

**A**

In the first armed robbery (in January 2012), Mitchell entered a bank in Saginaw, Michigan. Vaulting the teller counter, he brandished a handgun. Mitchell told the bank employees to empty the cash drawers into a bag. They did. He fled on foot.

The next month, Mitchell entered another bank in Saginaw. Leaping onto the teller counter, he waived a handgun while telling the bank employees to empty the cash drawers into a bag. Again, they did. He walked out with about $19,500, firing a shot as he left.

Another month, another bank. In March 2012, Mitchell entered a bank and vaulted the teller counter. Brandishing a handgun, he told the teller to empty the cash drawers. The teller did. Again, Mitchell fled on foot.

On the fourth trip to the bank, Mitchell was joined by Bibbs and Sheppard. While Bibbs waited in the car, Mitchell and Sheppard entered the bank. Mitchell wore a mask and carried a handgun. Again, he took money from the teller. Sheppard observed. The two men then left the bank. When a woman followed, Mitchell pointed the gun at her. She stopped. Mitchell and Sheppard then got into the waiting car, and Bibbs drove the three men away.

Three days later, the three men robbed a bank in Owosso, Michigan. Again, Mitchell and Sheppard entered the bank while Bibbs waited in the car. This time, both Mitchell and Sheppard wore masks and brandished handguns. Mitchell jumped on the counter to better interact with the tellers. Sheppard devoted his attention to the patrons. After gathering about $7,500, the men ran from the bank to the waiting car. They were observed by an off duty police officer. A chase ensued, with the getaway vehicle reaching speeds of more than 100 miles per hour. Eventually, police used "stop sticks" to force the vehicle to a stop. The three men were arrested.

**B**

In May 2012, a grand jury in the Eastern District of Michigan returned an indictment against the three. The grand jury charged Mitchell with: (1) one count of conspiracy to commit bank robbery in violation of 18 U.S.C. § 371; (2) five counts of armed bank robbery in violation of 18 U.S.C. § 2113(a) & (d); (3) and five counts of using or carrying a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). The grand jury charged Sheppard and Bibbs with one count of conspiracy and two counts of armed bank robbery and two counts of using or carrying a firearm during a crime of violence.

Both Shepard and Bibbs entered into plea agreements with the government, pleaded guilty, and were sentenced. Mitchell also entered into a plea agreement with the government. In exchange for pleading guilty to two counts of using or carrying a firearm during and in relation

to a crime of violence (counts 9 and 11 of the indictment), the government agreed to dismiss the remaining counts. Mr. Mitchell then entered a guilty plea on December 20, 2012 consistent with the plea agreement. Six months passed.

On May 23, 2013, Mr. Mitchell's sentencing hearing was held. At the hearing, and against the advice of his counsel, Mr. Mitchell orally moved to withdraw his guilty plea. He explained:

> I mean, it's already taking my whole life away from me. I'm only 20 years old. If I go through with this, 35 years, I come out at 55, that's no life. What do I have to draw from? Education, start something, five or ten years left to live of my life, I just — I just don't see that happening.
>
> I mean nowadays, by the time you're 18, 21, as a young black male, you're either dead or in jail and I still have a chance — I still think I have a chance to be successful in life. I just need to be given another chance. I don't feel I belong behind bars or in prison. I don't know nothing about prison or jail. I just don't think that is in my best interests.
>
> I think the way the world is now, we should try to — try to rehabilitate people instead of just throwing them away. I mean, rehabilitation — if you take my life away from me, I mean, what's – what's to say, I mean, that it's not going to happen again, I mean, more people doing the same thing that I had done. I mean — I mean, my children aren't going to have nothing to draw from. I mean, it's just pointless and I just don't feel that I should be placed behind a place like this.
>
> I'm not a bad person. Yeah, I made a bad decision but I mean, people make mistakes. Nobody is perfect. I mean, I just think I should have a fair chance at having my life back.

The Court adjourned the case to June 18. And it directed the government to respond to the motion.

## II

"A defendant may withdraw a plea of guilty," Federal Rule of Criminal Procedure 11 provides in pertinent part, "after the court accepts the plea, but before it imposes sentence if . . .

the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B); *see United States v. Hyde*, 520 U.S. 670, 671 (1997).

The Sixth Circuit has identified several factors for a district court to consider when deciding whether a defendant has established a "fair and just reason" to withdraw the plea:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it;
>
> (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings;
>
> (3) whether the defendant has asserted or maintained his innocence;
>
> (4) the circumstances underlying the entry of the guilty plea;
>
> (5) the defendant's nature and background;
>
> (6) the degree to which the defendant has had prior experience with the criminal justice system; and
>
> (7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008). The Sixth Circuit cautions, however, that this list is "general and nonexclusive." *United States v. York*, 405 F. App'x 943, 948 (6th Cir. 2011) *Id*. The factors are not intended to be scored by some fixed formula (for example, give the defendant two points for each factor in his favor and if the sum is greater than or equal to eight, permit him to withdraw the plea).

Rather, "the district court must review all the circumstances surrounding the original entrance of the plea as well as the motion to withdraw." *York*, 405 F. App'x at 949 (quoting *United States v. Triplett*, 828 F.2d 1195, 1197 (6th Cir. 1987)). In evaluating the totality of the circumstances, "the court should be mindful that the aim of the rule is to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a

tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *York*, 405 F. App'x at 949 (quotation marks omitted) (quoting *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991)).

Here, the totality of the circumstances do not suggest "fair and just reason" for the withdrawal of Mitchell's plea.

First, Mitchell did not promptly move to withdraw the plea. The Sixth Circuit observes that a "delay of almost five months is certainly beyond the bounds of the time frame ordinarily considered appropriate for motions to vacate." *Alexander*, 948 F.2d at 1004 (collecting cases). Here, more than six months passed between the entry of the guilty plea and the motion to withdraw the plea.

Second, Mitchell offers no reason (much less a valid one) to explain why he did not move to withdraw his plea earlier in the proceedings.

Third, Mitchell has not asserted his innocence. On the contrary, as the government cogently observes, Mitchell has repeatedly acknowledged that he is guilty of the crime. He did so after he was arrested. He did so during the plea colloquy. And he implicitly did so at sentencing, when he testified:

> I just need to be given another chance. I don't feel I belong behind bars or in prison. I don't know nothing about prison or jail. I just don't think that is in my best interests.
>
> I think the way the world is now, we should try to — try to rehabilitate people instead of just throwing them away. I mean, rehabilitation — if you take my life away from me, I mean, what's – what's to say, I mean, that it's not going to happen again, I mean, more people doing the same thing that I had done. I mean — I mean, my children aren't going to have nothing to draw from. I mean, it's just pointless and I just don't feel that I should be placed behind a place like this.
>
> I'm not a bad person. Yeah, I made a bad decision but I mean, people make mistakes.

Fourth, the circumstances underlying the entry of the guilty plea demonstrate that the plea was not hastily entered into with an unsure heart and confused mind. Before the plea hearing, Mitchell entered into a Rule 11 plea agreement that spelled out the charges he was pleading guilty to, the factual basis for those charges, and the sentencing consequences. At the plea hearing, the Court examined the factual basis and discussed the sentencing consequences. Defendant accepted responsibility for the facts and testified that his plea was voluntarily and intelligently made.

Fifth, Mitchell's nature and background do not provide any fair and just reasons for permitting the withdrawal of the plea. Twenty years old, Mitchell completed the eleventh grade and had a 3.4 GPA in high school. Moving to withdraw his plea, he argued:

> I mean nowadays, by the time you're 18, 21, as a young black male, you're either dead or in jail and I still have a chance — I still think I have a chance to be successful in life. I just need to be given another chance. I don't feel I belong behind bars or in prison. I don't know nothing about prison or jail. I just don't think that is in my best interests.
>
> . . .
>
> I'm not a bad person. Yeah, I made a bad decision but I mean, people make mistakes. Nobody is perfect. I mean, I just think I should have a fair chance at having my life back.

Mitchell is thus not asserting that he has a meritorious defense to the charges — he is asserting that he would rather not face the consequences of his actions.

Sixth and similarly, Mitchell's prior experience with the criminal justice system does not support his motion to withdraw the plea. Though still a young man, he has more than passing familiarity with crime and punishment.

Finally, granting the motion would prejudice the government. As the government cogently observes" "The two codefendants agreed to cooperate against defendant. Since his plea,

each of defendant's codefendants has been sentenced. Thus, the government has lost any leverage it might have needed relative to other defendants testifying against [Mitchell]." Gov't's Br. 8 (quotation marks omitted) (quoting *United States. v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996).

### III

Accordingly, it is **ORDERED** that Mitchell's oral motion to withdraw his plea is **DENIED**.

Dated: June 12, 2013

                                s/Thomas L. Ludington
                                THOMAS L. LUDINGTON
                                United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 12, 2013.

                                s/Tracy A. Jacobs
                                TRACY A. JACOBS